**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Janet Zongker,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>J.P. Morgan Chase Bank, N.A.,<br><br>　　　　Defendant. | No. CV-07-0778-PHX-FJM<br><br>**ORDER** |

The court has before it defendant's motion for summary judgment (doc. 51), plaintiff's response (doc. 57), and defendant's reply (doc. 62).

**I**

Plaintiff became employed with Bank One Corporation in August 1996. She went on medical leave beginning August 15, 2003, and in May 2004 was approved for long-term disability ("LTD") leave retroactive to February 13, 2004. Her employment was terminated in November 2005 after she exhausted her LTD leave and was not able to return to work.

As a Bank One employee, plaintiff participated in the Bank One Corporation Long-term Disability Plan (the "Plan"). According to the Plan, while on LTD leave, plaintiff was eligible to receive health and welfare benefits, including dental, medical, and vision insurance, provided that she pay a monthly premium of $176.20 in 2004, and $180.42 per month in 2005. Bank One sent an invoice to plaintiff each month for the current month's

benefits coverage.  DSOF  ¶ 17.  When plaintiff failed to pay premiums for August, September, and October 2004, Bank One sent a letter to plaintiff, dated November 1, 2004, stating that her benefits would be cancelled due to non-payment of premiums effective July 31, 2004.  Plaintiff then sent Bank One three checks, each in the amount of $176.20, for payment of the past due amounts, bringing her account current through October 2004.[1]  Bank One accepted the late payments and reinstated her benefits.  In January 2005, Bank One merged with JPMorgan and JPMorgan assumed administration of the Plan.

JPMorgan alleges that because of the termination and subsequent reinstatement of coverage, plaintiff was not separately invoiced for the November 2004 premium.  Instead, the November charge was included on the December 23, 2004 invoice, for a total amount due of $352.40.  Plaintiff asserts that she never received this invoice.  Nevertheless, on January 7, 2005, she sent a check to Bank One in the amount of $352.40.  DSOF ¶ 24.  She claims, however, that this check was payment for an invoice dated December 10, 2004, which she received from JPMorgan, that showed an amount due of $180.42 for benefits for the month of January 2005, with a due date of January 1, 2005.[2]  According to plaintiff, the January 7, 2005 payment of $352.40 covered both the January 2005 premium, as well as the as yet unbilled premium for February 2005.  Defendant credited this payment to the November and December 2004 premiums.

Plaintiff then received an invoice dated January 10, 2005, which showed a past due amount of $180.42, and a total amount due of $360.84.  Plaintiff understood the past due amount was the charge for January 2005, and the new amount was the charge for February

---

[1] Although plaintiff has asserted differing positions, see DSOF, ex. 1, Zongker depo. at 75-80, she now concedes for purposes of the present motion that the three checks received by defendant on November 29, 2004 were for the months August, September, and October 2004.  PSOF 21, 22.

[2] After JPMorgan assumed administration of the Plan, it implemented new billing procedures.  Participants were no longer billed for the current month's premium as Bank One had done, but instead participants received invoices near the middle of each month for the following month's insurance coverage.  DSOF ¶¶ 26-27.

1   2005. Response at 6-7. This invoice stated that a minimum payment of $180.42 was
2   required by January 31, 2005, in order to avoid cancellation of her benefits. DSOF ¶ 30.
3       On February 9, 2005, because plaintiff had not paid her January 2005 premium,
4   defendant cancelled plaintiff's health insurance benefits effective January 1, 2005. Her
5   subsequent request to have her benefits reinstated was denied.

6                                         II

7       Plaintiff sued JPMorgan under the Employee Retirement Income Security Act
8   ("ERISA"), 29 U.S.C. § 1132(a), claiming that it improperly terminated her benefits and
9   breached its fiduciary duties under ERISA by cancelling her coverage despite receipt of
10  payments and despite its representations regarding amounts due. She argues that JPMorgan
11  should be estopped from terminating her benefits based on these representations.
12      JPMorgan first contends that it is entitled to summary judgment because it is not a
13  proper party. It argues that any claim for benefits under an ERISA plan must be brought
14  against the Plan itself.
15      ERISA allows a participant to bring a civil action "to recover benefits due to him
16  under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his
17  rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Here,
18  plaintiff seeks to recover benefits due to her under the terms of the Plan. Amended
19  Complaint at 4. JPMorgan was not only the employer, but also the sponsor and administrator
20  of the Plan, see PSOF, ex. 2, and as such is subject to liability under § 1132(a)(1)(B). See
21  Taft v. Equitable Life Assur. Soc'y, 9 F.3d 1469, 1471 (9th Cir. 1993) (holding that the
22  beneficiary of an ERISA plan may bring a civil action under § 1132(a)(1)(B) against a plan
23  administrator to recover benefits). Moreover, § 1132(a)(3) allows a participant to bring an
24  action "to enjoin any act or practice" that violates ERISA or "to obtain other appropriate
25  equitable relief." Liability under § 1132(a)(3) is "not limited to the plan itself or its
26  fiduciary." Everhart v. Allmerica Fin. Life Ins. Co., 275 F.3d 751, 753 (9th Cir. 2001) (citing
27  Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 247, 120 S. Ct.
28

1    2180, 2188 (2000)). As an plan administrator and fiduciary, JPMorgan is a proper defendant
2    in this action.

### III

4    Plaintiff argues that, based on its written and oral representations regarding her
5    payment obligations, JPMorgan should be equitably estopped from terminating her benefits.
6    A claim of equitable estoppel in the ERISA context requires a showing of a material
7    misrepresentation, reasonable and detrimental reliance upon the representation, and
8    extraordinary circumstances. Pisciotta v. Teledyne Indus. Inc., 91 F.3d 1326, 1331 (9th Cir.
9    1996). In addition, the plaintiff must show that the plan provisions are ambiguous and that
10   representations were made to the employee involving an oral interpretation of the plan. Id.

11   Plaintiff does not contend that her estoppel claim is based on ambiguous Plan
12   language. Therefore, her claim fails on this basis alone. However, she also fails to present
13   any evidence that her reliance on JPMorgan's representations was reasonable. She does not
14   suggest that she made timely premium payments or that she paid all amounts due. Instead,
15   she claims that she paid what she *reasonably believed* was due based on JPMorgan's
16   representations.

17   Plaintiff first relied on the December 10, 2004 invoice, which stated that a payment
18   of $180.42 for January 2005 benefits was due by January 1, 2005. She then received a
19   January 10, 2005 invoice, which showed a past due amount of $180.42, and a new balance
20   of $360.84. The January 10th invoice stated that a payment of $180.42 was required by
21   January 31, 2005, in order to avoid termination of benefits. She claims that because the
22   January 10th invoice did not mention past due amounts for November and December 2004,
23   she was misled into believing that the only amount presently due was $360.84 for her
24   January and February benefits, and that the check she sent on January 7, 2005 in the amount
25   of $352.40, satisfied this payment obligation. She claims this belief was reinforced by
26   information she received from a JPMorgan human resources representative named Ekite, who
27   told her that as long as she made the payment indicated on December 10th invoice by
28   January 31, 2005, her coverage would not be cancelled. DSOF 44.

Even if we assume that plaintiff intended her January 7, 2005 payment of $352.40 as payment of the January and February 2005 premiums, her belief that she was then current on her payments was unreasonable. Plaintiff's argument ignores the fact that she had not paid the premium for November and December 2004 benefits. She has submitted no evidence from which she could have reasonably concluded that she was not required to pay for these benefits. While some confusion may have arisen as a result of plaintiff's missing and late payments, as well as from the merger and transition of Plan administration from Bank One to JPMorgan, there is no evidence that JPMorgan or any of its employees misled her into reasonably believing that she was current on her payments or that she was somehow excused from paying premiums for her November and December 2004 benefits. Her reliance on the January 10, 2005 billing notice in concluding that she did not owe anything for November and December 2004, is not reasonable as a matter of law and her equitable estoppel argument therefore fails.

**IV**

Plaintiff also asserts a claim for breach of fiduciary duty arising from the same set of facts that formed the basis of her equitable estoppel claim. A claim for breach of fiduciary duty lies only against an individual or entity that qualifies as an ERISA "fiduciary." Schmidt v. Sheet Metal Workers' Nat'l Pension Fund, 128 F.3d 541, 547 (7th Cir. 1997). A plan fiduciary is defined as one who exerts "any discretionary authority . . . respecting management of such plan." 29 U.S.C. § 1002(21)(A). Fiduciaries typically do not give individual advice concerning the application of the plan to a specific set of facts. Instead, such information is normally provided by lower-level employees who perform ministerial functions. Because they lack discretionary authority these individuals are not fiduciaries, and any misinformation they offer is typically not actionable under ERISA. Schmidt, 128 F.3d at 547-48; Ariz. State Carpenters Pension Trust Fund v. Citibank, 125 F.3d 715, 721-22 (9th Cir. 1997) (holding that a "person or entity who performs only ministerial services or administrative functions within a framework of policies, rules, and procedures established by others is not an ERISA fiduciary").

Here, the alleged misleading representations were made by an unidentified billing department employee and a human resources employee. Plaintiff does not argue that these individuals were anything other than ministerial employees. Therefore, their communication with plaintiff was not a fiduciary act. Plaintiff's reliance on information provided by these non-fiduciary employees is insufficient to support a claim for breach of fiduciary duty.

Plaintiff's reliance on <u>Bowerman v. Wal-Mart Stores, Inc.</u>, 226 F.3d 574 (7th Cir. 2000), is misplaced. In <u>Bowerman</u>, the court concluded that the plan's administrator breached its fiduciary duty where the plan documents themselves provided inaccurate information to beneficiaries. <u>Id.</u> at 590-91. There is no allegation here that the Plan documents were ambiguous or inadequate. Where the fiduciary provided complete and correct information to beneficiaries in the plan documents, a ministerial employee's "misrepresentation in response to a single question from a single participant" is insufficient to create fiduciary liability. <u>Schmidt</u>, 128 F.3d at 547. As the Plan documents were clear, there was no breach of fiduciary duty.

**V**

Therefore, **IT IS ORDERED GRANTING** defendant's motion for summary judgment (doc. 51). The clerk shall enter final judgment.

DATED this 20th day of October, 2008.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge